IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRIDGET MARIE HESS,<br><br>  Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC,<br><br>  Defendants. | Case No.: 3:25-cv-841<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bridget Marie Hess ("Plaintiff") brings this action against Experian Information Solutions, Inc. ("Experian") and Trans Union LLC, ("Trans Union"), (collectively, "Defendants") and states as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this District under 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff resides in Baraboo, Wisconsin and qualifies as a "consumer" under the FCRA.

1. Defendant Experian is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California 92626. Experian can be served

1

through its registered agent C T Corporation System located at 330 North Brand Boulevard, Glendale, California 91203.

2.  Defendant Trans Union is a consumer reporting agency with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

## FACTUAL ALLEGATIONS

5.  In 2023, Plaintiff's personal identifying information was compromised as a result of a data breach at the Saint Clare Hospital and Clinic in Baraboo, Wisconsin

6.  At some point, a fraudster used her personal identifying information to apply for credit and open accounts in Plaintiff's name without her knowledge or authorization.

7.  Plaintiff learned about the fraudulent activity on her credit file on or about November of 2024 when she received a call from her bank suggesting there appeared to be fraudulent activity on her credit file.

8.  Plaintiff obtained copies of her credit files from Experian and Trans Union and identified numerous unauthorized accounts and hard inquiries, as follows:

| Unauthorized Accounts | | |
|---|---|---|
| | EXPERIAN | TRANS UNION |
| Affirm Inc. (Partial Account #: F1C3) | X | |
| Affirm Inc. (Partial Account #: RYT4) | X | |
| Affirm Inc. (Partial Account #: XP0N) | X | |
| Citicards/Citibank (Partial Account #: 542418161895) | X | X |
| Chime/Stride Bank, N.A. (Partial Account #: 35155141961) | X | X |

2

| Unauthorized Hard Inquiries | | |
|---|---|---|
| | EXPERIAN | TRANS UNION |
| Wells Fargo Card Services (01/04/2025) | | X |
| KOHLSCAPONE (07/21/24) | | X |
| Capital One (04/19/2024) | | X |
| **Inaccurate Phone Numbers and Addresses** | | |
| | EXPERIAN | TRANS UNION |
| 909-533-0531 | X | X |
| 4188 Old Hamner Rd Norco, CA 92860-1272 | X | |
| 4188 Old Hamner Rd #6 Norco, CA 92860-1272 | X | X |
| PO BOX 15369 Wilmington DE 19850 | X | |
| 616 Shelden Ave Ste 300 Houghton, MI 49931 | X | |
| PO BOX 15077 Wilmington, DE 19850 | X | |

9. Between November 2024 and July 2025, Plaintiff submitted numerous written and telephonic disputes to Experian and TransUnion. In each dispute, she explained that she was the victim of identity theft; identified the fraudulent accounts, inaccurate personal identifying information, and the unauthorized hard inquiries; and demanded the removal of the fraudulent accounts from her credit file.

10. Discovery is needed to determine the details of the disputes and Defendants' responses. Based on the information currently available, however, Plaintiff can allege the following details about her disputes and Defendants' responses.

11. Plaintiff submitted a written dispute to Experian in November 2024. By letter dated November 27, 2024, Experian responded by removing an inaccurate phone number, but refused to remove any other inaccurate information.

3

12. Plaintiff submitted a dispute to Trans Union in December 2024. By letter dated December 11, 2024, Trans Union verified the unauthorized Citibank account, and the three listed hard inquiries.

13. By letter dated January 2, 2025, Experian removed three of the five fraudulent addresses associated with Plaintiff from Plaintiff's consumer report.

14. By letter dated January 23, 2025, Experian rejected Plaintiff's disputes, stating that it had conducted an investigation and verified the accuracy of the disputed accounts. Experian also advised Plaintiff that it had deleted the fraudulent hard inquiries.

15. By letter dated February 12, 2025, Experian purported to respond to another dispute but did not make any changes.

16. By letter dated March 31, 2025, Experian confirmed it had deleted the fraud alert on Plaintiff's account.

17. By letter dated March 31, 2025, Experian added an Extended Fraud Alert on Plaintiff's account.

18. By letter dated June 19, 2025, Experian verified the accuracy of the Chime account.

19. Plaintiff was extremely concerned that her information was jeopardized and contacted the national credit bureaus to place a security alert on her credit reports.

20. Throughout this process, Plaintiff also filed identity theft reports with local and federal law enforcement agencies.

21. Specifically, on or about December 12, 2024 Plaintiff filed a police report with the Sauk County Sheriff's Office regarding the theft of her identity (Case SC24-13594).

22. Around the same time, she also filed an initial Federal Trade Commission ("FTC") Affidavit which Plaintiff is no longer accessible to Plaintiff.

23. On August 1, 2025, Plaintiff filed another Identity Theft Report through the Federal Trade Commission.

## Plaintiff's August 2025 Disputes

24. Concerned that Defendants would continue to report the fraudulent accounts, Plaintiff determined that she needed to escalate the issue to prevent further damage to her credit files and reports.

25. On or around August 8, 2025, Plaintiff disputed the Fraudulent Accounts with Defendants. Specifically, Plaintiff disputed that the Fraudulent Accounts were not hers, but rather the product of fraud and identity theft.

26. Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

27. Plaintiff also stated that she discovered multiple fraudulent accounts and personal information, including an address and a phone number, that did not belong to her, that she did not authorize or benefit from.

28. Plaintiff further requested that the identity theft information be blocked from her credit file immediately.

## Trans Union Failed to Conduct a Reasonable Investigation

29. On or about August 14, 2025, Defendant Trans Union received Plaintiff's dispute and request that the identity theft information be blocked from her credit file.

30. On or about August 16, 2025, Defendant Trans Union informed Plaintiff that the information will be removed.

31. However, on or about August 27, 2025, Plaintiff received another reply from Trans Union stating that the CITICARDS CBNA account was "added back" into her credit report.

32. On September 22, 2025, Plaintiff obtained an updated credit report from Trans Union. Upon review, Trans Union still reported the CITICARDS CBNA account.

33. Defendant Trans Union failed to adequately review all of the information provided to it by Plaintiff.

34. Defendant Trans Union failed to reasonably reinvestigate Plaintiff's August 2025 dispute and failed to block the identity theft information.

35. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

36. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Experian Failed to Conduct a Reasonable Investigation

37. On or about August 14, 2025, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from her credit file. Along with Plaintiff's dispute letter, Plaintiff provided Experian a copy of the Identity Theft Report submitted to the FTC.

38. In an email dated August 21, 2025, Plaintiff received a response from Experian in which Experian states they refused to investigate the dispute further because the dispute lacked validation of the report having been filed with the FTC.

39. On or about September 8, 2025, Defendant Experian sent another letter to Plaintiff, stating that if Plaintiff believes the three Affirm accounts were opened as a result of identity theft, Affirm requests that Plaintiff contact them directly.

40. With that letter, they also sent an updated report to Plaintiff reporting all three Affirm accounts.

41. After contacting Affirm directly, by phone and by mail, the only steps taken by Affirm were to confirm Plaintiff's email address.

42. Defendant Experian failed to adequately review all of the information provided to Experian by Plaintiff.

43. Defendant Experian failed to reinvestigate Plaintiff's May 2025 dispute and failed to block the identity theft information.

44. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

45. Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

## PLAINTIFF'S DAMAGES

46. Upon learning of the identity theft, Plaintiff filed a police report, filed an FTC ID Theft Report, and filed disputes with Defendants.

47. Plaintiff immediately identified herself as an identity theft victim and requested that Defendants block the account information resulting from the identity theft.

48. Plaintiff suffered ongoing harm from fraudulent accounts that continue to appear on her credit reports, despite her repeated efforts to resolve the issues. She has disputed the false information directly with the reporting banks and financial institutions, but the fraudulent accounts remain, damaging her credit profile.

49. On or about August 4, 2025, Plaintiff applied for and was denied a personal loan from Summit Credit Union. This denial was for funds sought for Plaintiff's daily necessities

7

throughout the winter months. This denial was caused by the inaccurate inclusion of the unauthorized accounts and hard inquiries on her credit report.

50. Plaintiff is increasingly reluctant to apply for new credit and fears further fraudulent activity or additional harm to her credit.

51. The harm caused by these fraudulent accounts includes severe emotional distress, loss of credit opportunities, out-of-pocket financial losses, significant time, money, labor, and effort spent trying to resolve the issues, and an ongoing sense of vulnerability of her financial identity. Plaintiff has also developed a lack of trust in others as a result of these issues – including trust in those closest to her. Additionally, Plaintiff has developed a fear of others wanting to do her financial harm. Plaintiff also feels a significant lack of privacy resulting from the seemingly never-ending stream of disclosing her social security number on forms and phone calls in an attempt to better her situation. This situation has greatly affected her emotional well-being, financial stability, and overall quality of life.

52. Plaintiff sought medical attention to cope with the severe emotional distress and was prescribed medication.

53. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

54. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

55. Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Defendants' violations of the FCRA are willful.

56. Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers, leading, here, directly to Plaintiff's injuries as described in this complaint.

57. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to benefit from her credit rating; measurable detriment to her credit rating; reduced overall creditworthiness; and the expenditure of time, money, labor, and effort disputing and trying to remove fraudulent accounts and information that were the product of identity theft.

58. Additionally, Plaintiff suffers from increased difficulty conducting daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment associated with being a victim of identity theft whose honesty is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**Violations of 15 U.S.C. § 1681e(b)**
**(All Defendants)**

59. Plaintiff incorporates and realleges all above paragraphs as if fully set forth herein.

60. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

61. On numerous occasions, Defendants prepared patently false consumer reports concerning Plaintiff.

9

62. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff and Plaintiff's creditworthiness by suggesting that Plaintiff had a delinquent loan account on at least one occasion.

63. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

64. Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

65. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time, money, labor, and effort disputing and trying to remove fraudulent accounts and information that were the product of identity theft.

66. Additionally, Plaintiff suffers from increased difficulty conducting daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment associated with being a victim of identity theft whose honesty is doubted and questioned and disbelieved by Defendants.

67. Defendants' conduct, actions, and inactions were willful, rendering Defendants Experian and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

68. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### Violations of 15 U.S.C. § 1681i
### (All Defendants)

69. Plaintiff incorporates and realleges all above paragraphs as if fully set forth herein.

70. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "if the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

71. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

72. Plaintiff disputed the inaccurate information with Defendants and requested that they correct and/or delete the fraudulent accounts and information in her credit file that is patently inaccurate, misleading, and highly damaging to her—namely, the Fraudulent Accounts that were the product of identity theft.

73. Plaintiff disputed the identity theft information to Defendants several times to no avail.

74. On at least one occasion, Plaintiff supported her dispute with a copy of the police report and the FTC ID Theft Report.

75. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations

of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

76. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

77. Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with Defendants.

78. Defendants' repeated refusals to block the disputed Fraudulent Account provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

79. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and whether to delete the disputed information, before the end of the 30-day period from the time they received Plaintiff's disputes; and by failing to maintain reasonable procedures with which to verify disputed information in Plaintiff's credit file.

80. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and whether to delete the disputed information, before the end of the 30-day period from the time they received Plaintiff's dispute; and by failing to maintain reasonable procedures with which to verify disputed information in Plaintiff's credit file.

81. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to benefit from her credit rating; detriment to her credit rating; reduced overall

creditworthiness; the expenditure of time, money, labor, and effort disputing and trying to remove fraudulent accounts and information that were the product of identity theft.

82. Additionally, Plaintiff suffers from increased difficulty conducting daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment associated with being a victim of identity theft whose honesty is doubted and questioned and disbelieved by Defendants.

83. Defendants' conduct, actions, and inactions were willful, rendering Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

84. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### Violations of 15 U.S.C. § 1681c-2
### (All Defendants)

85. Plaintiff incorporates and realleges all above paragraphs as if fully set forth herein.

86. Defendants violated 15 U.S.C. § 1681c-2 by failing to block reporting of the disputed information which was due to identity theft from Plaintiff's file.

87. Plaintiff repeatedly submitted ample evidence of the fact that Plaintiff was an identity theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing Defendants with a copy of FTC Identity Theft Report.

88. Defendants should have blocked the Fraudulent Account but failed to do so.

89. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to benefit from her good credit rating; detriment to her credit rating;

13

reduced overall creditworthiness; the expenditure of time, money, labor, and effort disputing and trying to remove the Fraudulent Accounts which were the product of identity theft.

90. Additionally, Plaintiff suffers from increased difficulty conducting daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment associated with being a victim of identity theft whose honesty is doubted and questioned and disbelieved by Defendants.

91. Defendants' conduct, actions, and inactions was willful, rendering the Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

92. Plaintiff is entitled to recover attorneys' fees and costs from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief against Defendants:

(a) Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b) An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c) An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d) Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

**JURY DEMAND**

Plaintiff hereby demands jury trial on all issues.

Dated: October 14, 2025

/s/ *Yaear Weintroub*
Yaear Weintroub
NY Bar No. 6153431
*Attorneys for Plaintiff*
*Bridget Marie Hess*
**CONSUMER ATTORNEYS**
68-29 Main Street
Flushing NY 11367
T: (718) 576-1863
F: (718) 247-8020
E: yweintroub@consumerattorneys.com